IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARK BOWDEN**, | Case No. 3:17-cv-1411-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **UNITED RENTALS (NORTH AMERICA) INC.**, and **GENIE INDUSTRIES (A TEREX BRAND) INC.**, | |
| Defendants. | |

J. Randolph Pickett, R. Brendan Dummigan, and Kimberly O. Weingart, PICKETT DUMMIGAN MCCALL LLP, Centennial Block, Fourth Floor, 210 SW Morrison St., Portland, OR 97204. Of Attorneys for Plaintiff.

Nicholas E. Wheeler, Wendy M. Margolis, and Josephine C. Kovacs, COSGRAVE VERGEER KESTER LLP, 900 SW Fifth Ave., 24th Floor, Portland, OR 97204. Of Attorneys for Defendant Genie Industries (A Terex Brand) Inc.

**Michael H. Simon, District Judge.**

Plaintiff Mark Bowden originally brought this products liability action against

Defendants United Rentals (North America) Inc. ("United Rentals") and Genie Industries (A

Terex Brand) Inc. ("Genie"). Plaintiff has since settled his claims against United Rentals.

Plaintiff now alleges that Genie is liable for injuries he suffered while using a self-propelled

boom lift that Genie designed, manufactured, and sold. Before the Court is Genie's motion for

PAGE 1 – OPINION AND ORDER

summary judgment. Genie argues that there is no genuine dispute of material fact relating to the claimed design defect and that Plaintiff has failed to present evidence from which a reasonable jury could conclude that Genie is liable for plaintiff's injuries. Genie argues that Plaintiff must rely on expert testimony but has failed to present sufficient evidence. Genie also argues that Plaintiff may not assert a failure to warn theory as part of a design defect claim. For the following reasons, the Court DENIES Genie's motion for summary judgment.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiff, an experienced boom lift operator, suffered injuries on September 20, 2015 after a 2013 Genie S-45 self-propelled man lift/boom (the "boom lift") moved suddenly and violently when he operated it. On that date, Plaintiff tried to move the boom lift from a stationary position

against a solid barrier, close to another boom lift. Like a car, boom lifts are designed with a set of steering wheels (like the front wheels on a car) and a set of non-steering wheels (like the rear wheels on a car) attached to a base in which the engine is housed. A boom, which is the cage from which the operator drives the boom lift, is attached to the base by a movable, extendable shaft. The shaft connects with the base of the boom lift near the non-steering wheels. The boom can be positioned over either the steering or the non-steering wheels. When the boom is over the steering wheels, it is less stable because it is further from its fulcrum.

On the day of Plaintiff's injury, the boom lift originally was positioned with the steering wheels, directed toward the barrier against which the boom lift was parked. The wheels were not straight but turned (as if a driver of a car had not straightened the front wheels after parking). Thus, to operate the boom lift, Plaintiff needed to back the boom lift out of its parked position, with the boom positioned over the steering wheels. Completing this maneuver required Plaintiff to activate a feature called the "drive enable switch." When plaintiff operated the boom lift in this manner, using the drive enable switch feature, the boom lift threw the cage, along with Plaintiff inside, back and forth. Plaintiff alleges that he suffered serious physical injuries as a result.

Plaintiff filed his Complaint in Multnomah County Circuit Court against both United Rentals, which had rented the boom lift to Plaintiff, and Genie, the manufacturer of the boom lift. Defendants removed the case to this Court. Plaintiff later amended his Complaint to elaborate on his theories of design defect.

In his First Amended Complaint, Plaintiff alleges that the boom lift was dangerously defective under theories of strict products liability and negligence. ECF 60. Plaintiff contends that a different design that would have made the lift inoperable when the controls were set in the

manner described below would cure the alleged defect. *Id.* at 3-4.[1] He also claims that Genie

failed to provide an adequate warning about the danger of operating the lift in certain conditions.

*Id.* at 5. Plaintiff identifies the alleged defects as follows:

> 8. The design of the aforementioned 2013 Genie S-45 was dangerously defective in one or more of the following particulars:
>
>> a) The lift should have been designed to disable the fast mode when the wheels are turned and the lift's drive is first engaged;
>>
>> b) The lift should have been designed to disable the fast mode when the drive enable switch must necessarily be utilized to move the lift;
>>
>> c) The lift should have been designed so that it would not go into the fast mode unless the operator purposely set control inputs to engage the fast mode;
>>
>> d) The lift causes the operator to be violently thrown about inside the lift cage when:
>>
>>> i) the lift is raised off the ground but not enough to breach the horizontal plane;
>>>
>>> ii) the lift drive speed selector is set for level ground (allowing for maximum speed);
>>>
>>> iii) the engine idle selector is set for the hare symbol;
>>>
>>> iv) the unit's steering axle is positioned nearest the platform with the wheels steered to the side;
>>>
>>> v) the foot switch is depressed by the operator; and
>>>
>>> vi) the joystick is slowly toggled by the operator;

---

[1] Plaintiff does not allege a manufacturing defect. Although the Supplemental Report of John Biskey, Plaintiff's design expert, refers to the boom lift as "defective in design and manufacturing" (ECF 77-10, p. 3), Plaintiff's First Amended Complaint (ECF 60) does not allege a manufacturing defect and relies solely on a design defect theory.

e) The lift causes the operator to be violently thrown about inside the lift cage when:

> i) the lift is raised off the ground but not enough to breach the horizontal plane;

> ii) the lift drive speed selector is set for level ground (allowing for maximum speed);

> iii) The lift is being operated in turtle (slow) mode;

> iv) the unit's steering axle is positioned nearest the platform with the wheels steered to the side;

> v) the foot switch is depressed by the operator; and

> vi) the joystick is slowly toggled by the operator.

In this configuration, the lift would shift into high mode when the operator tried to move the lift causing the same violent movement of the basket that occurs when the lift controls are set in hare (high speed) mode;

f) The lift should have been designed to be inoperable when the controls were set as noted in 7(d) or 7(e) above, or, at a minimum, these configurations of the lift and the controls should have prevented the high speed operation of the lift;[2]

g) The lift was also dangerously defective in that there were no warnings on the lift or in the operator's manual that warned against the danger of operating the lift in the configurations noted in (d) and 7(e) above, at a time when defendant Genie knew, or, in the exercise of reasonable care, should have known, of the reasonably foreseeable and unreasonably dangerous risk of harm caused by the existence of those defects.

*Id.* at 3-5.

---

[2] Paragraphs 8(f) and 8(g) in Plaintiff's First Amended Complaint (ECF 60) contain a typographical error. These paragraphs refer to paragraph "7(d)" and "7(e)," but Plaintiff meant to refer to paragraphs "8(d)" and "8(e)." The Court accepts this informal amendment.

Plaintiff seeks damages of $25,000 for past medical expenses, $50,000 for future medical expenses, $140,000 for lost wages, $500,000 for future lost earnings, and $3,500,000 for non-economic damages. *Id.* at 7.

## DISCUSSION

### A.  Admissibility of Expert Testimony

Plaintiff offers expert testimony from Mr. John W. Biskey that the boom lift was defective in design because it was unreasonably dangerous. Plaintiff also offers expert testimony from Dr. Ruston M. Hunt that Genie did not adequately warn consumers of the danger posed by the usage configuration at issue. Among other arguments, Genie challenges the admissibility of Plaintiff's expert evidence.

#### 1.  Legal Standard

In *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014), the Ninth Circuit discussed the standard under which a district court should consider the admissibility of expert testimony. As explained by the Ninth Circuit:

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702.

> Under *Daubert* [*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)] and its progeny, including *Daubert II* [*Daubert v. Merrell Dow Pharms, Inc.*, 43 F.3d 1311 (9th Cir. 1995)], a district court's inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.

The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id.; see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*Id.* at 1043-44 (alterations in original).

### 2. Testimony of John W. Biskey

Plaintiff offers expert testimony from Mr. John W. Biskey, the President of Biskey's

Forensic Engineering, Inc. Mr. Biskey is a licensed Professional Engineer with more than 40

years of work experience. He has a Master of Science degree in mechanical engineering and a

Bachelor of Science degree in metallurgical engineering. ECF 77-8 at 6. Mr. Biskey provided a declaration and two reports, stating his opinions and bases. His declaration is dated August 8, 2019. ECF 77-4. His first, or initial, report is dated April 23, 2019. ECF 77-8. His second, or supplemental, report is dated November 12, 2019. ECF 77-10. Mr. Biskey was deposed by Genie on February 25, 2020. ECF 75-2.

In both his initial report (ECF 77-8) and his supplemental report (ECF 77-10), Mr. Biskey details the examination process that he relied on to form his expert opinions. Mr. Biskey, along with representatives from Genie and United Rentals, conducted a thorough and methodical examination of the boom lift. This examination was videotaped and documented. First, the boom lift was inspected to ensure that all components functioned properly. Next, the boom lift was configured as it had been by the Plaintiff just before his injury. Operating in this configuration, the boom lurched back and forth. Mr. Biskey formed his opinions and conclusions based on this testing process, as well as his expert experience and knowledge. The methods and analysis applied by Mr. Biskey are sound and cannot be construed as "unreliable" or "nonsense." Mr. Biskey's expert opinions are admissible. To the extent that Genie challenges certain conclusions or argues that Mr. Biskey was unaware of certain information, Genie may cross-examine Mr. Biskey at trial. Genie's challenges go to the weight that should be given to Mr. Biskey's opinions, not their admissibility.

### 3.  Testimony of Ruston M. Hunt

Plaintiff also offers expert testimony from Dr. Ruston M. Hunt, Ph.D., the principal of RM Hunt, Ltd. Dr. Hunt is an expert in Human Factors Engineering. He has a Ph.D. in mechanical engineering and both a Master of Science degree and a Bachelor of Science degree in industrial engineering. ECF 77-9 at 1. Dr. Hunt provided a declaration and two reports, stating his opinions and bases. His declaration is dated August 8, 2019. ECF 77-5. His first, or initial,

report is dated April 25, 2019. ECF 77-9. His second, or supplemental, report is dated November 14, 2019. ECF 77-11.

In Dr. Hunt's initial report (ECF 77-9) and supplemental report (ECF 77-11), he provides his opinions regarding the warning and labelling of the boom lift and its instruction manual. Dr. Hunt's initial report, dated April 25, 2019, lays out a clear and reliable methodology for his conclusions regarding the warnings on the boom itself and in the instruction manual. His analysis follows a structured methodology, which he states is "generally, if not almost universally, accepted in the human factors engineering profession." Dr. Hunt uses this methodology to reach opinions that the jury may consider about whether the way in which the boom lift's operation intersected with the warnings and instructions was unreasonably dangerous.

Dr. Hunt's conclusions regarding design modifications, however, are not sufficiently supported by reliable methodology, and thus they are excluded. Dr. Hunt's initial report, dated April 25, 2019, states: "While there may be design modifications such as safety interlocks and limits on platform speed that could protect against such hazards this is beyond the scope of my analysis in this matter." ECF 77-9 at 20. If Dr. Hunt had presented such analysis with reliable methodology, the Court would evaluate whether Dr. Hunt is qualified to present such an opinion. Dr. Hunt, however, presented no such methodology in his initial or supplemental reports, and thus he may not opine on this issue. Dr. Hunt's expert opinions regarding the warning and labelling of the boom lift and its instruction manual are admissible. To the extent that Genie challenges certain conclusions or argues that Dr. Hunt was unaware of certain information, Genie may cross-examine Dr. Hunt at trial. Genie's challenges go to the weight that should be given to Dr. Hunt's opinions regarding warnings and labeling, not their admissibility.

## B.  Design Defect

Genie moves for summary judgment against Plaintiff's claim that the boom lift was defectively designed. Genie primarily argues that Plaintiff's expert evidence is inadmissible because Plaintiff's expert Mr. Biskey did not provide a basis for concluding that an alternative design was feasible. The Court denies Genie's motion because, based on the record evidence, a reasonable jury could conclude that an alternative design is feasible and that Genie is liable for a design defect that caused Plaintiff's injuries.

It is not Plaintiff's burden to redesign the boom lift for Genie, but rather to demonstrate that the boom lift, as designed, was *unreasonably* dangerous. In Or. Rev. Stat. § 30.920, Oregon codified the "consumer expectations" test for determining when a product is defective. *See McCathern v. Toyota Motor Corp.*, 332 Or. 59, 75 (2001). This test requires a plaintiff to "prove that, when the product left the defendant's hands, the product was defective and dangerous to an extent beyond that which the ordinary consumer would have expected." *Id.* at 79. "Whether a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer is a factual question to be determined by the jury." *Id.* at 77. A trial court, however, must "ensure that the evidence is sufficient for the jury to make an informed decision about what ordinary consumers expect." *Id.* Because Or. Rev. Stat. § 30.910 creates a rebuttable presumption that a product is not defective,[3] "a plaintiff may not rely on the bare assertion of a defect from which a jury may infer unreasonable dangerousness; rather, a party must affirmatively put forth some evidence on the issue of dangerousness before the issue may properly be submitted to a jury." *Russell v. Deere & Co.*, 186 Or. App. 78, 83 (2003).

---

[3] It is a "disputable presumption" in such cases that "a product as manufactured and sold or leased is not unreasonably dangerous for its intended use." Or. Rev. Stat. § 30.910.

Consumer expectations about how a product should perform under a specific set of circumstances may, in some cases, be within the realm of jurors' common experience. *McCathern*, 332 Or. at 78. In other cases, however, the products or circumstances involved may be such that the average person would not know what to expect. *Id*. "When a jury is unequipped, either by general background or by facts supplied in the record, to decide whether [a product] failed to perform as safely as an ordinary consumer would have expected . . . additional evidence about the ordinary consumer's expectation is necessary." *Id*. (quotation marks omitted) (alteration in original). In a design defect case, this additional evidence may consist of risk-utility balancing—proving that a practicable and feasible design alternative was available. *Id*. Such proof, however, is not required. *See id.* ("We agree that evidence related to risk-utility balancing, which may include proof that a practicable and feasible design alternative was available, will not *always* be necessary to prove that a product's design is defective and unreasonably dangerous, i.e., that the product failed to meet ordinary consumer expectations.") (emphasis in original). The issue now before the Court is whether Plaintiff has made a sufficient showing that a reasonable juror could conclude that an alternative design is feasible, and, if not, whether Plaintiff has otherwise demonstrated that the boom lift was unreasonably dangerous as designed.

Plaintiff contends that the boom lift should have been designed to prevent operation in *high speed* (or, in "hare" mode) when the drive enable switch is required for operation under the conditions at issue. Plaintiff's expert, Mr. Biskey, argues that because the boom lift is already engineered to detect these conditions, reengineering these controls to prevent operation until the speed settings are at the slowest possible level (or, in "turtle" mode) is a relatively minor and feasible alternative design. Plaintiff has presented no evidence of any testing done to assess the feasibility of Mr. Biskey's proposal that the boom lift be configured to prevent operation in fast,

or "hare," mode when the boom lift is being operated in the manner that Plaintiff alleges he

operated it, or of other products on the market that include such a feature. Because no such

testing has occurred, the Court must determine whether the evidence presented thus far is

sufficient to present to a jury on the question of whether Mr. Biskey's proposed alternative is

practicable. *See Wilson* 282 Or. at 68 ("The trial court should not permit an allegation of design

defect to go to the jury unless there is sufficient evidence upon which to [determine whether the

proposed alternative design has been shown to be practicable]."). The Court considers Mr.

Biskey's reports, his declaration, and his deposition in making this determination.

Genie is correct in stating that Mr. Biskey has not presented analysis of the marginal cost

of a change that would have prevented use in the configuration that allegedly caused Plaintiff's

injuries. Such an analysis, however, is not required for the Court to submit a question of

unreasonable danger to a jury in this case. During his deposition, Mr. Biskey identified the

mechanisms already present in the boom lift and explained how those systems could be used to

create the safeguards he says are needed, as discussed in his expert materials:

> Well, it can be done in various ways. You have a proportional
> controller which obviously has some sort of a logic ability to it. In
> other words it senses how far it's moved and sends a proportional
> electrical signal to somewhere else. That thing could be linked to a
> switch or switches sensing the wheel position. That when already
> there's switches that sense the platform position or the relation to
> the steered wheels or when it's out of -- out of being at the end
> opposite the steered wheels, you could -- you could have similar
> type switches on the steering system that beyond a certain amount
> of rotation of the steered wheels that the signal would be limited.
> In other words, if that controller is sending a greater voltage, let's
> say, calling for greater movement, it would be truncated or limited
> by part of the electric circuitry.

ECF 75-2 at 75.

The existence of the safety feature that detects the conditions at issue is affirmed by

Genie's expert witness, Mr. Berry. ECF 77-14 at 3-4. As Mr. Biskey explains in his deposition,

the process of refining the mechanical and electrical changes he proposes would be an iterative, subjective one. *See* ECF 75-2 at 78-79. Despite Mr. Biskey not having performed such testing, the Court concludes that given the current undisputed capabilities of the boom lift, the feasibility of Plaintiff's proposed alternative design is suitable for determination by a jury.

## C.  Failure to Warn

### 1.  Whether Plaintiff's Evidence Is Sufficient

Genie also moves for summary judgment against Plaintiff's failure to warn claim. *See* ECF 60 at 3-5.[4] Genie placed instructions on the lift operator's platform near the "drive enable switch" that directed the operator, in relevant part, as follows: "To drive, hold drive enable switch to the side and slowly move drive control handle. Machine may drive in opposite direction that drive steer controls are moved." ECF 55 at 76, 77.

A warning is adequate when it is "in such a form that it could reasonably be expected to catch the attention of the reasonably prudent [person] in the circumstances of its use" and its content is "of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." *Anderson v. Klix Chem. Co.*, 256 Or. 199, 207 (1970), *rev'd on other grounds, Phillips v. Kimwood Mach. Co.*, 269 Or. 485 (1974). More specifically,

> [A user] shall have a fair and adequate notice of the possible consequences of use or even misuse. * * * The rule is that when a manufacturer undertakes by printed instructions to advise of the proper method of using [the] chattel, [the manufacturer] assumes the responsibility of giving accurate and adequate information with

---

[4] The relevant allegation in paragraph 8 of Plaintiff's First Amended Complaint, with the typographical error corrected, reads: "The design of the aforementioned 2013 Genie S-45 was dangerously defective in one or more of the following particulars: . . . g) The lift was also dangerously defective in that there were no warnings on the lift or in the operator's manual that warned against the danger of operating the lift in the configurations noted in ¶¶[8](d) and [8](e) above . . . ." ECF 60 at ¶ 8(g).

> respect thereto, including instructions as to the dangers involved in
> improper use . . . .

*Schmeiser v. Trus Joist Corp.*, 273 Or. 120, 132 (1975) (simplified).

When a warning is given, "the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if [the warning] is followed, is not in defective condition, nor is it unreasonably dangerous." *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or. App.444, 454 (2002) (quoting *Restatement (Second) of Torts*, comment j) (alteration in original). The adequacy of a warning ordinarily is a question for the jury. *Id.*; *see also Lavoie v. Power Auto, Inc.*, 259 Or. App. 90, 102 (2013). A plaintiff, however, must provide some evidence from which a jury could find that the warnings were inadequate. *See Safeco Ins. Co. of Am. v. Olstedt Constr., Inc.*, 2004 WL 1050877, at *7-8 (D. Or. May 7, 2004) (granting summary judgment against a failure to warn claim because the evidence showed the warnings provided by the defendants were adequate).

Plaintiff, relying on the expert opinion of Dr. Hunt, argues that the warning here was insufficient. ECF 60 at 5. Dr. Hunt also opines that the warnings were not in "ANSI Z535 compliant formatting," which is used elsewhere in the instruction manual to indicate safety warnings. The Court finds that the expert testimony submitted by Plaintiff regarding the warning at issue is sufficient to allow consideration of this question by a jury.

## 2.    Whether a Design Defect Claim May Be Brought with a Failure to Warn Claim

Genie also argues that Plaintiff's failure to warn claim is improper under Oregon law, because such a claim may not be brought along with a design defect claim. Genie's argument, however, misstates the applicable law. Courts often submit to a jury alternative claims for design defect and failure to warn. *See, e.g., Lakin v. Senco Prods., Inc*., 144 Or. App. 52, 58 n.3 (1996) ("As noted above, the court submitted plaintiffs' design defect, inadequate testing, and failure to

warn specifications to the jury."); *cf. Glover v. BIC Corp.*, 6 F.3d 1318, 1324 (9th Cir. 1993) (explaining that a defectively designed product can have an adequate warning that may alleviate strict liability, but a defectively manufactured product cannot have a warning that would alleviate strict liability).

The cases that Genie cites for its assertion that a failure to warn claim may not be brought along with a design defect claim miss the mark. Genie cites *Glover*, which as noted above supports the proposition that failure to warn and design defect claims are compatible. In *Smith v. Fred Meyer*, also cited by Genie, the Oregon Court of Appeals sustained the trial court's decision to strike the plaintiff's failure to warn claim because the claim alleged "that defendants were required to warn users that their product, even if used properly, contained an inherent defect, making it unsuitable for its intended use." 70 Or. App. 30, 33 (1984). That is not what Dr. Hunt opines. Similarly, another case that Genie cites involved a situation in which "no warning could possibly make a defectively manufactured product safe for normal use." *Knight v. Just Born, Inc.*, 2000 WL 924624 at *12 (D. Or. March 28, 2000).

Nor does *Edmons v. Home Depot*, 2011 WL 127165, (D. Or. 2011), another case cited by Genie, support Genie's argument. In *Edmons*, the court noted the distinction between failure to warn *of a* design defect and a failure to warn *as a* design defect. *Edmons,* 2011 WL 127165, at *2, n.2. Oregon law recognizes strict liability where "a product presents an unknown danger that must be addressed by instruction as to its proper and safe use." *Id*. This is what Plaintiff alleges, in the alternative.

Plaintiff's allegations of defective design and defective warning are not incompatible. Rather, they are complementary. Plaintiff does not claim that the boom lift was so inherently defective that it was unsuitable for its intended use. Instead, he claims first that the machine was

unreasonably dangerous when used in a particular manner and the machine should be prevented from operating in that very specific way. Second, he claims in the alternative that if the product could not feasibly be modified to eliminate the specific danger, it needed a clear warning advising of that danger. Based on the record evidence, a jury reasonably could find that a different design was feasible, cost effective, and efficient, thus making the current design defective. Alternatively, even if a jury found that a different design would have not been feasible or would have been too costly or inefficient, a jury reasonably could find that an adequate warning would have effectively managed the risk. The Court therefore rejects Genie's argument that plaintiff's failure to warn claim is not cognizable.

## CONCLUSION

Genie's Motion for Summary Judgment (ECF 74) is DENIED.

**IT IS SO ORDERED**.

DATED this 11th day of September, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge